UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MONICA NANETTE VICKERY | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| VS. | § | |
| | § | |
| CALIBER HOME LOANS, INC., | § | COMPLAINT |
| | § | WITH JURY DEMAND ENDORSED |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Monica Nanette Vickery ("Plaintiff"), by counsel, and for her

Complaint against the defendant, Caliber Home Loans, Inc. ("Defendant" or "Caliber"), and

states as follows:

## I. INTRODUCTION

1. Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent

   violation of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15

   (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq*.,

   (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA") which

   relates to the dissemination of consumer credit and other financial information; 2) the

   Texas Debt Collection Act ("TDCA") Tex. Fin. Code § 392.001 *et. seq*.; 3) the common

   law tort of invasion of privacy; and 4) the chapter 7 discharge injunction of the United

   States Bankruptcy Court for the Eastern District of Texas, Sherman Division, and seeks

to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

## II. PARTIES

2.     Plaintiff is a natural person residing in Collin County, Texas and she is a "consumer" as defined by the FCRA.

3.     Defendant is a foreign corporation which may be served by delivering citation to its registered agent, CT Corporation System, at 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136.

4.     Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5.     Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6.     Defendant is a furnisher of consumer credit information to Trans Union, LLC, Equifax, Inc., and Experian Information Solutions, Inc. ("Experian"), the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.     Venue in this district is proper because the defendant transacts business in this district and Plaintiff filed her bankruptcy in this district.

## IV. FACTUAL ALLEGATIONS

9.    On September 28, 2010, Plaintiff filed a Chapter 7 bankruptcy in case number 10-43299 ("Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court").

10.    Prior to Plaintiff filing her Bankruptcy Case, HSBC d/b/a Beneficial ("HSBC") asserted a pre-petition claim against her in an attempt to collect the subject consumer debt from Plaintiff.  The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  In Schedule "D" of Plaintiff's bankruptcy petition, the subject claim was listed as a secured claim, secured by a lien on Plaintiff's previous home located at 2909 Pinewood Dr., Garland, TX (the "Property") and was identified as Account No. 0009248915, also known as Caliber Loan and Account No. 9802864794-011D (the "Account").  Plaintiff listed the Property as "surrendered" on the Debtor's Statement of Intentions filed with her bankruptcy petition and vacated the Property immediately.

11.    A true and correct copy of Debtor's Statement of Intentions is attached hereto as Exhibit "A."

12.    On December 29, 2010, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein) in her Bankruptcy Case.  The Discharge Order discharged Plaintiff from any personal liability for the claim at issue.  Included with the Discharge Order was an explanation of the general injunction prohibiting creditors

3

holding pre-petition claims from attempting to collect the claims against Plaintiff.  A true and correct copy of the Discharge Order is attached hereto as Exhibit "B."

13.    On December 31, 2010, the clerk of the Bankruptcy Court mailed a copy of the Discharge Order to HSBC and the other creditors and parties listed on the mailing matrix filed in the Bankruptcy Case.

14.    At no time did HSBC, Defendant, or any other person or entity, object to or dispute the details of the subject claim listed in the September 28, 2010 schedules filed in Plaintiff's Bankruptcy Case.

15.    At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject debt.

16.    At no time during the pendency of the Bankruptcy Case was the subject claim declared to be non-dischargeable.

17.    In July 2011, Plaintiff asserted a claim against HSBC for a discharge injunction violation for sending her a statement on the Account and impermissibly accessing and reviewing her credit report post-discharge.

18.    On or about July 20, 2011, Plaintiff and HSBC entered into a Confidential Settlement Agreement and Mutual Release ("First Settlement Agreement") resolving Plaintiff's prior claims against HSBC.

19.    In January 2012, Plaintiff asserted a second discharge injunction violation claim against HSBC alleging that it again sent her statements on the Account after the Parties entered into the First Settlement Agreement.

20.    On or about February 16, 2012, Plaintiff and HSBC entered into a second Confidential Settlement Agreement and Mutual Release ("Second Settlement Agreement") resolving Plaintiff's new claims.

21.    HSBC advised Plaintiff by written letter dated January 16, 2014 that it had transferred the servicing rights on the Loan to Defendant.

22.    A true and correct copy of the January 16, 2014 letter is attached hereto as Exhibit "C."

23.    Defendant sent Plaintiff a letter dated February 11, 2014 regarding the lack of hazard insurance on the Property, requesting Plaintiff immediately provide Defendant with insurance information, and its intent to buy such insurance and collect the premium from the Plaintiff.

24.    A true and correct copy of the February 11, 2014 letter is attached hereto as Exhibit "D."

25.    On February 27, 2014, Defendant impermissibly accessed Plaintiff's credit report with Experian Credit Bureau ("Experian").

26.    A true and correct copy of relevant portions of Plaintiff's Experian credit report is attached hereto as Exhibit "E."

27.    On or about March 19, 2014, Defendant sent Plaintiff a monthly statement on the Account, complete with return envelope and payment coupon stating that the "Amount Due" was "$69,624.68" and the "Payment Due Date was 03/36/14."

28.    A true and correct copy of the March 19, 2014 statement is attached hereto as Exhibit "F."

29.    On March 26, 2014, Defendant sent Plaintiff a letter regarding the Loan and lack of insurance on the Property and its intent to buy insurance and collect the premium from the Plaintiff.

30.    A true and correct copy of the March 26, 2014 letter is attached hereto as Exhibit "G."

31.    On or about April 7, 2014, Defendant sent Plaintiff a monthly statement on the Account, complete with return envelope and payment coupon stating that the "Amount Due" was "$70,584.88' and the "Payment Due Date" was "04/26/14."

32.    A true and correct copy of the April 7, 2014 statement is attached hereto as Exhibit "H."

33.    Defendant sent Plaintiff a letter dated April 25, 2014 regarding the lack of hazard insurance on the Property, requesting Plaintiff immediately provide Defendant with insurance information, and its intent to buy such insurance and collect the premium from the Plaintiff.

34.    A true and correct copy of the April 25, 2014 letter is attached hereto as Exhibit "I."

35.    At all times at issue after January 16, 2014, Defendant was: (1) the agent of HSBC; and (2) had knowledge about Plaintiff's Bankruptcy Case and discharge, as it learned about the discharge from employees or agents of HSBC, when it took over the servicing file for Plaintiff's Account, or when it pulled Plaintiff's Experian credit report on February 27, 2014.

36.    Despite having knowledge of the Plaintiff's bankruptcy discharge and the First and Second Settlement Agreements, Defendant engaged in post-discharge debt collection activity on the Account against Plaintiff by: (1) sending Plaintiff statements demanding she pay the discharged debt; (2) sending Plaintiff letters regarding the Account, as if it

was still active and the debt owed, and (3) impermissibly accessing and reviewing Plaintiff's credit report maintained by Experian and misrepresenting to Experian that her credit reports were being pulled for "collection," "account review" or other permissible purpose.

37.    If the purpose for accessing Plaintiff's Experian credit report was for "collection" or "review purposes," the debt on the Account had been discharged and there was no legitimate reason for Defendant to review Plaintiff's credit reports.  If the reports were reviewed for collection purposes, Defendant was trying to collect a debt in violation of the discharge injunction.  If it denies that this was the purpose, then Defendant was trying to gain access to Plaintiff's personal financial information which is protected by law.

38.    This illegal access to Plaintiff's credit report by Defendant has occurred as recently as February 27, 2014, long after the discharge of the debt at issue.

39.    The conduct of Defendant has proximately caused Plaintiff past and future monetary loss, past, past and future mental distress and emotional anguish and other damages that will be presented to the jury.

40.    Defendant knew and continues to know that a discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit report after the discharge was granted in her Bankruptcy Case.

41.     After a reasonable time for discovery, Plaintiff believes she will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing credit reports for account holders whose debts with Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of so doing.

42.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

43.     After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by Defendant at issue were performed with malice, were done wantonly, recklessly, intentionally or willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

44.     After a reasonable time for discovery, Plaintiff believes she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V.   GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

45.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

46.    The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f)   Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2)   the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

47.    Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)   To a person which it has reason to believe –

(A)   intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

    (F)  otherwise has a legitimate business need for the information *   *   *

(ii)  to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

48.    On at least one (1) occasion after the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case, Defendant requested and obtained Plaintiff's consumer report from Experian credit bureau.

49.    On such occasion, Defendant represented to Experian that such requests were made for "account review" or "collection" purposes.

50.    When requesting and obtaining Plaintiff's credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

51.    Defendant has actual knowledge that as of Plaintiff's bankruptcy filing in October 1, 2010 and its subsequent discharge through the previous servicer, that the underlying Account was closed and Defendant was legally prohibited from pursuing any collection against it or communicating with Plaintiff about the Account and the underlying discharged debt to justify an account review of her credit information.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with the credit Experian.

52.    At the time Defendant impermissibly accessed Plaintiff's credit report, Defendant had actual knowledge that Plaintiff had not requested new credit from it or had initiated a

credit transaction with Defendant at any time since her bankruptcy filing or discharge. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information as it did.

53. Defendant had actual knowledge as of January 15, 2014, that Plaintiff did not authorize access and reviews of her consumer report.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information when it engaged in such action.

54. For Defendant to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitute its knowing and willful violations of the FCRA.

55. After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant requested and obtained Plaintiff's private personal and financial information from Experian for the illegal purpose of attempting to collect on the underlying discharged debt.

56. After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

57. After a reasonable time to conduct discovery, Plaintiff believes she can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible

purpose, thereby subjecting Plaintiff to having her private, personal and financial information disclosed without her consent, authorization or other legal justification.

58.     As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of her privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

59.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.   The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

60.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

61.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits the pulling of a credit report without a valid purpose, Defendant's actions were also a violation of the Texas Finance Code, and Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place;

b)    Tex. Fin. Code § 392.304(a)(8). which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Defendant alleged the justification for pulling Plaintiff's reports was an "account review" or "other business transaction," that was a misrepresentation of the status of the debt at issue, and by continuing to send statements to Plaintiff showing a balance due on the Account and enclosing a remittance coupon, Defendant was misrepresenting that the subject debt was collectable when it was not by virtue of the automatic stay or the discharge injunction; and

c)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's Bankruptcy Case and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the discharged debt at issue in violation of the discharge injunction, and the continued sending Plaintiff statements and demands for payment on the Account was a deceptive means to collect a debt, since the automatic stay was in effect or the debt had already been discharged and was uncollectible.

62.    Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

63.   Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

## INVASION OF PRIVACY

64.   Plaintiff restates and reiterates herein all previous paragraphs.

65.   Defendant's conduct, as described herein, when it acquired a copy of Plaintiff's consumer report constituted an invasion of Plaintiff's private affairs. The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and other expenses.

66.   Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF - COUNT IV

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

67.   Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

68.   At all times material to this proceeding, Defendant had actual knowledge of Plaintiff's's Bankruptcy Case and the discharge of the debt at issue.

69.   Defendant failed to cease its debt collection activity on the Account and debt at issue when it became aware that Plaintiff filed for bankruptcy protection and the debt had been discharged in her Bankruptcy Case, as evidenced by Defendant sending Plaintiff a

collection letter, statements, accessing her credit report from Experian without a lawful purpose, and misreporting the status of the account and debt at issue to Experian.

70.    Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of Plaintiff's previous settlements with HSBC and the notices from the Bankruptcy Court about Plaintiff's Bankruptcy Case, the discharge of Plaintiff's debt at issue and the legal effect of the discharge; illustrates Defendant's contempt for Federal law and the discharge injunction.

71.    The actions of Defendant in accessing Plaintiff's credit report from Experian and sending Plaintiff collection letters and statements on the Account, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. § 362 and 524(a)(1)-(3).

72.    The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the chapter 7 bankruptcy filed by Plaintiff.   With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.   Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on her claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.   Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made

for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

73. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

74. No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

75. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.  None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

76. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.  Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law.  It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance.  Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is

prohibited.   Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant.   No allegation of a mitigation as a defense should be allowed.

77.   Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Monica Nanette Vickery, prays that the Court will:

A.     Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney fees as provided by the TDCA, the FCRA, for invasion of privacy and for violations of the discharge injunction.

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show herself justly entitled.

Respectfully submitted,

_____/s/ James J. Manchee____
James J. Manchee
Jim@mancheelawfirm.com
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
Maltamira@mancheelawfirm.net
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial to a jury on all issues so triable.

____5-9-14_____                        _____/s/ *James J. Manchee*_____
Date                                                   James J. Manchee

18